Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/01/2020 09:07 AM CDT

State of Nebraska, appellee, v.
Federico Torres, appellant.
___ N.W.2d ___

Filed August 25, 2020.    No. A-19-976.

1. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.
4. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.
5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
6. **Speedy Trial.** If a defendant is not brought to trial before the running of the time for trial as provided for in Neb. Rev. Stat. § 29-1207 (Reissue 2016), as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged and for any other offense required by law to be joined with that offense.
7. **____.** The primary burden of bringing an accused person to trial within the time provided by law is upon the State.
8. **Speedy Trial: Proof.** The burden of proof is on the State to show, by a preponderance of the evidence, that one or more of the excluded periods under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) are applicable.
9. **Speedy Trial: Notice: Time.** Nebraska law requires that a criminal defendant must be properly notified of the need to appear in court on a

given date and time before failure to so appear can initiate a period of excludable time.

10. **Judges: Judicial Notice: Words and Phrases.** Judicial notice is not the same as extrajudicial or personal knowledge of a judge.

11. **Court Rules: Judicial Notice.** A court is entitled to take judicial notice of its own rules.

Appeal from the District Court for Hall County, MARK J. YOUNG, Judge, on appeal thereto from the County Court for Hall County, ARTHUR S. WETZEL, Judge. Judgment of District Court reversed and cause remanded with directions to dismiss.

Jerrod P. Jaeger, Deputy Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

The Hall County Court denied Federico Torres' motion for absolute discharge of the criminal complaint filed against him based upon an alleged violation of his right to a speedy trial. Torres first appealed the county court's judgment to the district court, which affirmed. He now appeals to this court, alleging that the district court erred in affirming the county court's denial of his motion because, among other reasons, the county court improperly excluded from its speedy trial calculation the period of time after Torres failed to appear at his arraignment hearing through the time he was arrested on a bench warrant approximately 16 months later.

We find merit to Torres' assertion on appeal. There is no evidence in the record to indicate that Torres ever received notice of when he was to appear for his arraignment. As such, the county court erred in excluding from its speedy trial calculation

the time that Torres was presumed absent or unavailable. When we add this time back into the speedy trial calculation, we conclude that the county court should have granted Torres' motion for absolute discharge. Thus, the district court erred in affirming the county court's decision to deny the motion. We reverse, and remand with directions to dismiss.

## BACKGROUND

On September 14, 2017, the State filed a complaint in the county court charging Torres with criminal mischief, a Class II misdemeanor. That same day, the Hall County Attorney's office attempted to mail a letter to Torres at an address in Kearney, Nebraska, to notify him that he was to appear in county court on September 27 "to answer to" the charged offense. However, the letter was returned to the county attorney's office on September 18 by the post office, which letter indicated on its face that Torres had moved to a new address located in Sioux City, Iowa.

On September 26, 2017, the day before Torres was to appear in county court, the court filed a document titled "Notice." The filing provided that Torres' arraignment hearing had been rescheduled to October 25. A section of the filing with the heading "Special Instructions" noted that the arraignment hearing had been "[c]ontinued from 09/27/2017 at [Torres'] request." This section also indicated Torres' address had been "confirm[ed]" to be the same address in Sioux City that was listed on the September 14 letter, which was returned to the State as undeliverable. However, at the bottom of the filing, Torres' address was listed as the address the letter was originally sent to in Kearney.

Torres did not appear for the arraignment scheduled for October 25, 2017. The court noted on the record: "Torres is charged with criminal mischief. He had called the court. He was originally scheduled for September 27th, called and requested a continuance, it was continued until today's date for [Torres'] benefit." The court then accepted the probable

cause statement provided by the State and issued a bench warrant for Torres' arrest.

Torres was arrested on the warrant on February 28, 2019. He posted bond and was ordered to appear in county court on March 20. At the hearing on March 20, Torres appeared and was advised of his rights, the charge against him, and the possible penalties he faced. Torres asked that counsel be appointed to represent him. The court granted his request and entered a plea of not guilty on Torres' behalf. The court scheduled a status hearing for May 8. When the court informed Torres of the May 8 hearing, Torres stated to the court, "I really, I . . . couldn't come in, you know, the last court. I live in South Dakota, so hopefully that won't be a problem for me coming over here."

On May 7, 2019, the day before the scheduled status hearing, Torres filed a motion for absolute discharge. In the motion, he asked that the court enter an order "dismissing the charges against him in the above-captioned matter for the reason that [Torres] has not been tried within six (6) months of the filing of the charges." Torres specifically indicated that the motion was alleging a violation of both his constitutional and his statutory rights to a speedy trial. However, in the lower courts and in this appeal, Torres has focused his arguments on his statutory right to a speedy trial. Based upon Torres' filing of the motion for absolute discharge, the county court entered an order continuing the status hearing to July 3, and it noted that such continuance was "on motion of Defense."

At the July 3, 2019, hearing, the court considered Torres' motion for absolute discharge. The State offered as exhibits copies of pertinent court filings to support its argument that it still had time to bring Torres to trial. Essentially, the State contended that Torres could still be brought to trial because there were three periods of time which should be excluded from the 6-month speedy trial calculation. First, the State argued that Torres requested a continuance of his arraignment, so the time between September 27, 2017 (the day after he requested

the continuance), and October 25 (the day of the rescheduled arraignment), should be excluded. Second, the State asserted that because Torres failed to appear at the October 25 arraignment and then was not located and arrested on the bench warrant until February 28, 2019, that such time should be excluded as a delay resulting from the absence or unavailability of Torres. In the alternative, the State asserted that the time period between October 25, 2017, and February 28, 2019, should be excluded for good cause. Finally, the State asserted that because Torres had requested another continuance after filing his motion for absolute discharge, the time period from May 8, 2019 (the day after the filing), through the time the court rendered its decision on the motion should be excluded from the 6-month speedy trial calculation.

Torres contended that the 6-month time period to bring him to trial had long since passed. Torres focused his argument in favor of this theory on the time period between October 25, 2017, when he failed to appear at the scheduled arraignment, and February 28, 2019, when he was arrested. Torres asserted that this period of time could not be excluded from the 6-month speedy trial calculation because the State did not sufficiently demonstrate that Torres ever received notice of the rescheduled October 25, 2017, arraignment. Specifically, Torres pointed to the lack of evidence to demonstrate that a notice of hearing had been sent to his address in Sioux City. Torres explained, "So without that proof being established, that time cannot be excluded under that subdivision of the speedy trial statute. We're clearly well beyond six months, though." Torres offered exhibit 10, which explained his speedy trial calculations. In exhibit 10, Torres appears to concede that the time period between September 27, 2017, the day after he requested a continuance of the arraignment hearing, through October 25, the day the hearing was held, should be excluded because he had requested the continuance.

After the parties presented evidence and argument, the county court orally overruled Torres' motion for absolute

discharge. In its ruling, the court noted that the "only issue" was whether notice was provided to Torres of the rescheduled arraignment held on October 25, 2017. The court specifically referred to exhibit 3, which was offered by the State and which was a copy of the September 26, 2017, "Notice" filed by the court. The court stated as follows:

> That is Exhibit 3, which is the notice, and that notice does have an address confirmation on it confirming the address. It does show at the bottom, also, [an] address of Kearney, Nebraska, and neither party has provided information as to procedurally how that notice is in fact sent, where it's sent, who sends it. . . . However, that is a court document. The Court is familiar with the policies of how that is completed and done, and I think I can take judicial notice of our own rules. I know that when [my] bailiff . . . completes that and confirms an address upon a request from the defendant, that she sends notice to that address also. I agree the record doesn't indicate, there's no specific certificate of service on it. However, [Torres] did absent himself from the state of Nebraska.

After the court concluded that the period of time between October 25, 2017, and February 28, 2019, should be excluded from the 6-month speedy trial calculation, the court calculated the time when Torres would have to be brought to trial:

> [The] period from September 27th, 2017, until the warrant was served is an excludable period of time for purposes of speedy trial. That comes to 519 days. That means that the new speedy trial date, based on that excludable period, was August 14th, 2019. Giving [Torres] the benefit of the doubt and not excluding any other periods until May 8th, 2019, when [Torres] requested a continuance until today's date, July 3rd, that is an additional period of time of 56 days. That extends the new speedy trial date until October 9th, 2019. So the Court believes that the State has at least until October 9th, 2019, to bring [Torres] to trial.

Torres appealed to the district court the county court's decision to overrule the motion for absolute discharge. In Torres' statement of errors, he alleged that the county court had erred by finding sufficient evidence to prove that he had received notice of the October 25, 2017, arraignment and thus by excluding the time from October 25 to February 28, 2019, from the 6-month speedy trial calculation. Torres asserted that in finding sufficient evidence of notice, the county court had improperly supplemented the evidence provided by the State with its own independent knowledge of court policies and procedures.

A hearing was held on Torres' appeal on August 9, 2019. At the hearing, Torres argued to the district court that he was not provided with "legal notice" of the rescheduled October 25, 2017, arraignment and that, as a result, his subsequent absence should not have been excluded from the speedy trial calculations. Specifically, Torres asserted that the notice provided by the court or the State was purported to be sent by first-class mail. Torres contended, "That's not an adequate notice under any typical principle of law." Torres asserted his belief that the service required for the notice of hearing was "the equivalent of a civil summons or the actual service of the citation or for the Court to tell the person in person." There was nothing to indicate that service of the notice of hearing was attempted in these fashions.

Ultimately, the district court affirmed the judgment of the county court to overrule Torres' motion for absolute discharge. In a written order, the district court found that the county court "was not clearly wrong in inferring from Exhibit 3 (as uncontradicted evidence) that [Torres] was informed of the hearing date on October 25, 2017, and finding his nonappearance tolled the speedy trial time from that date." The district court noted, "[Torres] cannot now use his nonappearance after seeking a continuance of the arraignment as an excuse to avoid trial on the merits." The district court also found that contrary to an argument raised in Torres' brief, the time between September 27, 2017 (the day after Torres requested a continuance of

the arraignment), to October 25 was properly excluded from the speedy trial calculations because Torres had requested a continuance of the arraignment. The district court concluded that at the time Torres filed his motion for absolute discharge in May 2019, the State still had over 3 months to bring him to trial.

Torres appeals from the district court's order that affirmed the judgment of the county court.

## ASSIGNMENTS OF ERROR

On appeal to this court, Torres' assigned errors can be summarized as follows: First, he alleges that the district court erred in affirming the county court's judgment denying his motion for absolute discharge. Specifically, he challenges the district court's affirmance of the county court's findings regarding excludable time. Second, Torres alleges that the district court erred in concluding that he received a fair hearing in the county court when the county court improperly judicially noticed facts regarding whether he received notice of the arraignment.

## STANDARD OF REVIEW

[1-3] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. McGinn*, 303 Neb. 224, 928 N.W.2d 391 (2019), *modified on denial of rehearing* 303 Neb. 931, 932 N.W.2d 83. Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But we independently review questions of law in appeals from the county court. *Id*.

[4,5] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a

factual question which will be affirmed on appeal unless clearly erroneous. *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019). However, statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *Id*.

## ANALYSIS

Torres argues that the district court erred in affirming the denial of his motion for absolute discharge. Specifically, he asserts that two periods of time should not have been excluded from the speedy trial calculation. First, Torres argues that the period from the time he requested a continuance of his arraignment date until the time the arraignment was held should not be excluded from the calculation. Second, Torres argues that the period from the time he failed to appear at the arraignment and a warrant for his arrest was issued until the time he was arrested on that warrant should not be excluded. We address Torres' assertion regarding the period of time between his failure to appear at the arraignment and his ultimate arrest on the bench warrant, because such analysis is dispositive to this appeal.

[6] The statutory right to a speedy trial is set forth in Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016). *State v. Lovvorn, supra*; *State v. Vela-Montes*, 287 Neb. 679, 844 N.W.2d 286 (2014). Section 29-1207(1) provides that "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." If a defendant is not brought to trial before the running of the time for trial as provided for in § 29-1207, as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged and for any other offense required by law to be joined with that offense. *State v. Lovvorn, supra*; *State v. Vela-Montes, supra*. As is pertinent to this case, § 29-1207(4) includes the following periods, which shall be excluded in computing the time for trial:

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel. A defendant without counsel shall not be deemed to have consented to a continuance unless he or she has been advised by the court of his or her right to a speedy trial and the effect of his or her consent. . . .

. . . .

(d) The period of delay resulting from the absence or unavailability of the defendant.

[7,8] The primary burden of bringing an accused person to trial within the time provided by law is upon the State. *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017). If the State does not bring a defendant to trial within the permitted time, as extended by any periods excluded under § 29-1207(4), the defendant is entitled to absolute discharge from the offense charged. *State v. Beitel, supra*. The burden of proof is on the State to show, by a preponderance of the evidence, that one or more of the excluded periods under § 29-1207(4) are applicable. *State v. Beitel, supra*.

To calculate the deadline for trial under the speedy trial statutes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019); *State v. Vela-Montes, supra*. In the present case, the complaint was filed on September 14, 2017, giving the State until March 14, 2018, to bring Torres to trial if there were no excludable days. While the parties both acknowledge there are excludable days, they disagree as to which days are excludable and what the permitted time was that the State had to bring Torres to trial.

[9] The district court affirmed the county court's finding that Torres was absent or unavailable pursuant to § 29-1207(4)(d) from October 25, 2017, when he failed to appear for his arraignment, to February 28, 2019, when he was arrested on the bench warrant. As such, the district court affirmed the county court's decision to exclude this 491-day period from

its speedy trial calculation. However, Nebraska law requires that a criminal defendant must be properly notified of the need to appear in court on a given date and time before failure to so appear can initiate a period of excludable time. *State v. Richter*, 240 Neb. 223, 481 N.W.2d 200 (1992). See, *State v. Groves*, 238 Neb. 137, 469 N.W.2d 364 (1991); *State v. Beck*, 212 Neb. 701, 325 N.W.2d 148 (1982). When this rule is applied in conjunction with the burden upon the State to prove that any given period was excludable, the State in this case was required to prove, by a preponderance of the evidence, that Torres had notice of the October 25, 2017, hearing for which he failed to appear. Upon our review of the record, we conclude that the State did not meet its burden of proof in this regard.

There is no evidence in our record showing that Torres was ever notified to appear for the rescheduled arraignment on October 25, 2017. The September 26 notice filed by the county court indicates that the arraignment had been continued from September 27 at Torres' request. We note that there is actually no evidence in our record to indicate that Torres was the person who telephoned to request the continuance, other than in exhibit 10, where Torres' counsel appears to acknowledge Torres' action. It is also not clear how Torres would have known to request the continuance. He was not arrested directly for the offense nor was there a citation issued to him. The only notification that was attempted was a letter from the county attorney's office. The record indicates that he never received that letter. However, assuming that it was Torres who requested the continuance of the arraignment, there is nothing to indicate that Torres was informed of the rescheduled hearing date at the time he requested the continuance. In fact, noticeably absent from our record is an order for hearing signed by a judge or clerk magistrate accompanying the notice document, which memorializes the county court's order continuing the arraignment. We note that the notice document was signed by a person designated only as a "[c]lerk."

Moreover, there is no certificate of service attached to the notice document that would indicate whether the notice was ever forwarded to the parties. The body of the notice lists two different addresses for Torres—one in Kearney and one in Sioux City. The Kearney address was the same address that the State used when mailing the original letter, which attempted to notify Torres of the pending charges against him. The letter was subsequently returned as undeliverable at that address. The Sioux City address was the forwarding address provided to the State by the post office as a current address for Torres. In addition, the Sioux City address is noted as Torres' "confirm[ed]" address on the notice. Despite which address was correct, or whether either address was correct, there is no indication that the notice was ever mailed or otherwise forwarded to one or both of the addresses. As the county court correctly stated, "[N]either party has provided information as to procedurally how that notice is in fact sent, where it's sent, [or] who sends it." Notably, the State did not call anyone from the clerk's office to testify as to the specific handling of the notice. In addition, Torres never provided any information about his correct mailing address in September 2017 or whether he actually received the notice of the October 25 arraignment.

Despite this lack of tangible evidence regarding whether the notice was ever forwarded to Torres, the county court determined, following the close of the evidentiary portion of the hearing, that there had been proper notice by taking judicial notice of its own policies and its "own rules." Specifically, the county court stated:

> I know that when [my] bailiff . . . completes that and confirms an address upon a request from the defendant, that she sends notice to that address also. I agree the record doesn't indicate, there's no specific certificate of service on it. However, [Torres] did absent himself from the state of Nebraska.

We find that the county court erred in judicially noticing the fact that the notice was sent to both the Kearney and the Sioux

City addresses. We further find that the district court erred by relying on the county court's "mental process" and inferring from exhibit 3 that proper procedures were followed.

[10] Neb. Evid. R. 201(2), Neb. Rev. Stat. § 27-201(2) (Reissue 2016), pertains to judicial notice of adjudicative facts and states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A fact is adjudicative if the fact affects the determination of a controverted issue in litigation. *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989). Judicial notice, however, is not the same as extrajudicial or personal knowledge of a judge. *Id*. "'What a judge knows and what facts a judge may judicially notice are not identical data banks. . . . [A]ctual private knowledge by the judge is no sufficient ground for taking judicial notice of a fact as a basis for a finding or a final judgment . . . .'" *Id*. at 677, 438 N.W.2d at 468.

[11] A court is also entitled to take judicial notice of its own rules. See *Simmons v. Murray*, 189 Neb. 695, 204 N.W.2d 800 (1973), *overruled on other grounds, Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982). We can take judicial notice of the trial court's local rules when they are filed with the Clerk of the Nebraska Supreme Court. *Geiss v. Geiss*, 20 Neb. App. 861, 835 N.W.2d 774 (2013). In our examination of the local county court rules of the Ninth Judicial District, we could find no rule addressing notice procedures.

Here, the court judicially noticed the fact that the September 26, 2017, notice was sent to both the Kearney address and the Sioux City address. The court indicated that it was applying its knowledge of how the court's bailiff typically handles the mailing of notice documents. However, this knowledge does not appear to be the type that is either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Rather, it appears

that the court's knowledge of the bailiff's typical procedures is more akin to extrajudicial or personal knowledge. Such information is not appropriate for judicial notice. As such, we conclude that the county court erred in using its personal knowledge to absolve the State from making any affirmative showing that notice of the arraignment was properly provided to Torres. We do not consider the county court's judicially noticed facts in determining whether the State proved by a preponderance of the evidence that Torres received notice of the October 25 arraignment.

We determine that the State failed to meet its burden of proof that Torres had notice of the October 25, 2017, hearing for which he failed to appear. As such, we find that the 491-day period from the October 25 arraignment to February 28, 2019, when Torres was arrested on the bench warrant, should not have been excluded from the speedy trial calculation. Without this excluded period, it is clear that the State failed to bring Torres to trial within 6 months of the filing of the complaint on September 14, 2017, despite any other excludable time periods.

## CONCLUSION

As the State has failed to bring Torres to trial within 6 months of the filing of the complaint, his discharge is mandated by statute. The judgment of the district court is reversed, and the cause is remanded with directions to remand the case to the county court with directions to dismiss it.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.